**Jay C. MAGNUSON and Margaret L. Magnuson, individually and on behalf of all other similarly situated, Plaintiffs,**

v.

**The CITY OF HICKORY HILLS, a municipal corporation, Vydas Juskelis, individually and in his official capacity as Director of Public Works and Superintendent of the Sewer Department of the City of Hickory Hills, and Raymond Kay, in his official capacity as Mayor of the City of Hickory Hills, Defendants.**

No. 88 C 9815.

United States District Court, N.D. Illinois, E.D.

Jan. 16, 1990.

Joel D. Berger, Chicago, Ill., for plaintiffs.

Michael G. Cainkar, Chicago, Ill., Vincent Cainkar, Burbank, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Jay and Margaret Magnuson have filed this § 1983 claim against the City of Hickory Hills and certain municipal employees ("City").[1] In addition to seeking individual damages, the Magnusons attempt to certify a class of similarly situated plaintiffs. Currently pending are the Magnusons' motion for class certification and cross motions for summary judgment.

---

**1.** The Magnusons name Vydas Juskelis, and Raymond Kay in their individual and official capacities. Juskelis is the Director of Public Works and Kay is the Mayor of Hickory Hills.

## BACKGROUND

Prior to 1982, the Metropolitan Sanitary District of Greater Chicago discovered that the overloading of local sanitary sewer systems was threatening water supplies. The Sanitary District instructed the communities within its jurisdiction to take measures to abate the problem of excess infiltration of ground and storm water into the sewer system. In response to this mandate, the City of Hickory Hills instituted the program that has created the current dispute with the Magnusons.

Initially, the City inspected the homes in the community in an effort to locate those homes that had illegal connections to the sewer system. After these searches, the City identified 1200 homes which might have contained illegal connections. Included among this list were those homes which the City was unable to search.

On April 1, 1988, the City proceeded to mail notices to each of these 1200 homeowners. This "first notice" stated that the property had been identified as a source of illegal storm water. The notice listed potential sources and suggested methods of remedying defects. The notice also warned that court action and termination of water service could result if the home was not listed in compliance.

Those residents who did not schedule an inspection received a "second notice," which was mailed on June 22, 1988. This notice warned the resident that their property was still identified as a source of illegal storm water. The notice warned that legal action would be taken if corrections were not made or the home was not inspected. In addition, the notice contained an address to which the resident could write and request a hearing.

On August 26, 1988, the City mailed final notices to the residents of homes that were on the list of homes with possible illegal connections. This notice instructed the recipient that she could schedule a hearing if she believed she was in compliance. Again, the notice threatened that water service would be terminated if the residence was not listed in compliance by the deadline.

The Magnusons received each of these three notices. The Magnusons took no action after receiving the first two notices. After receiving the third notice, the Magnusons scheduled a compliance inspection. However, Barbara Magnuson subsequently canceled this appointment.

On November 8, 1988, a City employee affixed a sticker to the Magnusons' front door. This notice warned the Magnusons that their water service would be terminated unless a compliance inspection was scheduled by November 18, 1988. The Magnusons contacted the City and demanded the removal of this sticker; the Magnusons allege that a city employee damaged their door when the sticker was eventually removed.

The Magnusons scheduled a compliance inspection for November 16, but canceled this appointment. This action was filed on November 18, 1988.

On November 21, 1988, the City received a letter from the Magnusons' plumber. This letter stated that the sump pump violation at the Magnusons' home had been corrected. Accordingly, the City removed the Magnusons from the list of the homes that had illegal sources of storm water.

The Magnusons seek injunctive and declaratory relief, as well as compensatory and punitive damages. The Magnusons claim that the City's program violated several of their constitutional rights. Specifically, they claim that the City's program violated their Fourth Amendment right to be free from unreasonable searches and seizures, their procedural due process rights under the Fifth, Ninth and Fourteenth Amendments, and their right to substantive due process.

## DISCUSSION

### A. Motion For Class Certification

The Magnusons seek to certify a class of: All residents of City of Hickory Hills who have been threatened with water service termination, pursuant to the sewer rehabilitation program of the defendant City of Hickory Hills, and all those

persons who shall in the future be subjected to similar threats under the defendants' current sewer rehabilitation program or any such program to be developed by the defendant City of Hickory Hills.

The Magnusons argue that this class is certifiable under Fed.R.Civ.P. 23(b)(2) because the City has acted on grounds generally applicable to the class, making final injunctive relief or corresponding declaratory relief appropriate with respect to the class as a whole. However, we need not reach the issue of whether the proposed class meets the requirements of Rule 23(b)(2) because the Magnusons have failed to establish the threshold requirements of Rule 23(a).

Rule 23(a) provides that a district court may only certify a class if the claims or defenses of the representative parties are typical of the claims or defenses of the class, and the representative parties will fairly and adequately protect the interests of the class. A class action can not be certified unless the named plaintiff has standing. *Robinson v. City of Chicago*, 868 F.2d 959, 968 (7th Cir.1989). Because the Magnusons lack standing to seek injunctive relief, we deny the motion for certification.

To invoke Article III jurisdiction, a plaintiff seeking injunctive relief must show that there is some immediate danger of a direct injury. *Robinson*, 868 F.2d at 966, *citing City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). A plaintiff may seek injunctive relief only if he can demonstrate the threat of a future injury. Past exposure to illegal conduct is insufficient to establish a present case or controversy regarding injunctive relief. A past injury must be accompanied with continuing adverse effects. *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 675–676, 38 L.Ed.2d 674 (1974); *Alvarez v. City of Chicago*, 649 F.Supp. 43, 44 (N.D.Ill.1986). A party that can not demonstrate that an injunction will accomplish some tangible good in her favor has no standing to seek the injunction. *Mann v. Hendrian*, 871 F.2d 51 (7th Cir.1989).

The Magnusons lack standing to seek injunctive relief, as their claim is moot. Because their plumber completed the required repairs, the Magnusons have been removed from the list of homes with potential illegal connections. Therefore, they face no threat of future injury from the City. Moreover, the Magnusons have failed to demonstrate that any adverse effects remain from the past alleged illegal activity. Thus, an injunction would accomplish no tangible good in the Magnusons' favor, as they are in full compliance with the City's storm water regulations and face no threat of further action under the challenged program.

In an effort to preserve their standing, the Magnusons attempt to squeeze themselves into two exceptions to the mootness doctrine. First, they claim that the City's voluntary cessation of illegal activity does not moot their claim. Second, they assert that their claim is capable of repetition, yet evades review. However, a central element of both of these exceptions is that the party seeking to invoke the exception faces a reasonable expectation that the putatively illegal conduct will be repeated. *Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir.1988); *County of L.A. v. Davis*, 440 U.S. 625, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979); *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 102 S.Ct. 1070, 1074, n. 10, 71 L.Ed.2d 152 (1982); *Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 1669, 75 L.Ed.2d 675 (1982); *Alvarez*, 649 F.Supp. at 46. However, because their home is in compliance, the Magnusons face no expectation of being threatened with water termination or any other action.

Furthermore, a party who claims that the voluntary cessation of government conduct does not deprive him of standing must demonstrate that the illegal practice has continuing adverse effects. *Ragsdale*, 841 F.2d at 1365; *County of L.A. v. Davis*, 99 S.Ct. at 1383. In this case, the City's program has no continuing adverse effects on the Magnusons. The Magnusons have been removed from the list of potential

violators; they will no longer be contacted by the City in its administration of the sewer program. Therefore, the exception does not apply.

The Magnusons suggest that we should certify the class regardless of whether they have standing to bring the injunctive claim. They argue that their compensatory damage claims guarantee that they will vigorously protect the interests of the class. However, the Seventh Circuit has held that a class can not be certified by a representative who lacks standing to bring a claim for injunctive relief. *Robinson*, 868 F.2d at 968. Moreover, the Magnusons overlook the fact that under Fed.R.Civ.P. 23(b)(2), the class is certified for the purpose of securing injunctive or declaratory relief in favor of the class. Certainly, a representative who lacks standing to bring this type of claim does not have claims typical of the class as a whole. Thus, Rule 23(a) also precludes certification.

### B. Individual Claims [2]

Both the City and the Magnusons assert that they are entitled to summary judgment on the merits of the individual claims. "A motion for summary judgment should be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Checkers, Simon & Rosner v. Lurie Corp.*, 864 F.2d 1338 (7th Cir.1989) (citation omitted). The moving party bears the burden of establishing the absence of any disputed facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct 2548, 2553, 91 L.Ed.2d 265 (1986). If, however, the nonmoving party bears the burden of proving an issue at trial, it also bears the burden of presenting sufficient facts on summary judgment from which a trier of fact could find in its favor, and the moving party need only "[point] out to the District Court ... that there is an absence of evidence to support the nonmoving party's case." *Id.* 106 S.Ct. at 2554; *Beard v. Whitley Coun-*

*ty REMC*, 840 F.2d 405, 410 (7th Cir.1988). In deciding a motion for summary judgment, the court must read all facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Richardson v. Penfold*, 839 F.2d 392, 394 (7th Cir.1988).

#### 1. Fourth Amendment

The Magnusons claim that the City violated their right to be free from unreasonable searches and seizures when it threatened to impose penalties on them if they did not allow an inspection of their home. The City argues that its policy did not violate the Fourth Amendment because a homeowner had alternatives to the search. Specifically, the City notes that a homeowner could request a hearing or demonstrate that its home was in compliance.

Both parties seem to overlook the fact that the Magnusons fail to allege that their home was searched during the execution of the City's storm water policy. Their plumber notified the City that the home was in compliance before the City made a decision whether or not to inspect the Magnusons' home or whether or not to actually terminate their water service.

Because their home was not searched, the Magnusons do not have standing to bring a Fourth Amendment claim. "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978) (citations omitted), *quoting Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 966, 22 L.Ed.2d 176 (1969). While some Hickory Hills homeowners may have been forced to consent to a search to avoid termination of their water service, the Magnusons were not forced to make this choice. They can not bring a Fourth Amendment claim based on a choice that their neighbors may or may not have faced. Accordingly, we

---

**2.** As we have explained above, the Magnusons' claim for injunctive relief is moot. Therefore, we grant summary judgment as to this claim; the discussion of the individual claims is limited to the claim for compensatory damages.

**1444**

grant the City's motion for summary judgment on the Fourth Amendment claim.

### 2. Procedural Due Process

 The due process clause proscribes the deprivation of life, liberty or property without due process of law. Thus, the most basic due process requirement is the deprivation of some constitutionally protected interest. *Gaballah v. Johnson*, 629 F.2d 1191, 1202 (7th Cir.1980); *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985).

The Magnusons have failed to allege the deprivation of a constitutionally protected interest.[3] They argue that the procedures for challenging the City's decision to terminate their water service were confusing. However, their claim can not rest on an entitlement to water service because their water service was never terminated.[4] Even when viewing the facts in the light most favorable to the Magnusons, we cannot find that the Magnusons were deprived of any other constitutionally protected right. Therefore, we grant the City's motion for summary judgment on this claim.

### 3. Substantive Due Process

The Magnusons claim that the City violated their substantive due process rights under the Fifth, Ninth, and Fourteenth Amendments. As a threshold matter, we note that the Magnusons have stated no claim under the Ninth or Fifth Amendment. The Fifth Amendment applies only to the federal government, and the Ninth Amendment is not a substantive source of constitutional guarantees. *O'Donnell v. Village of Downers Grove*, 656 F.Supp. 562, 569 (N.D.Ill.1987).

 The Magnusons' substantive due process claim is also deficient. In order to prevail on a substantive due process claim, a plaintiff must establish that the challenged action is arbitrary and unreasonable and bears no substantial relationship to the public health, safety or welfare. *Burrell v. City of Kankakee*, 815 F.2d 1127, 1129 (7th Cir.1987); *Coniston v. Village of Hoffman Estates*, 844 F.2d 461, 467 (7th Cir.1988); *Euclid v. Ambler Realty*, 272 U.S. 365, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926). The City's program of inspection was enacted to prevent the deterioration of the sanitary sewer system. This goal is undeniably related to the public health, safety and welfare of the residents of Hickory Hills.

As the Magnusons observe, there may not be a precise relation between residential water service and the problem of excess storm water. However, an exact fit between the means and ends of the challenged regulation is not required. On the contrary, the Magnusons must demonstrate that the challenged program is arbitrary or unreasonable. *See e.g. Coniston*, 844 F.2d at 467. The nexus between the goal of eliminating illegal connections to the sanitary sewer system and the program adopted by the City is not arbitrary or unreasonable. Therefore, we grant the City's motion for summary judgment on this claim.

### CONCLUSION

For the reasons given above, the Magnusons' motion for class certification is denied. The City's motion for summary judgment is granted. It is so ordered.

---

**3.** This defect provides an additional ground for summary judgment on the Magnusons' substantive due process claim. See *infra*.

**4.** The Magnusons may not have had a claim even if their water service had been terminated. See *Sterling v. Village of Maywood*, 579 F.2d 1350, 1354 (7th Cir.1978).