Kenrick CHRISTOPHER, Plaintiff,

v.

The DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES; State of Florida Special Response Team of the Florida Highway Patrol; City of Opa–Locka; Miguel G. Galvez, individually; and Calvin L. Dupree, individually, Defendants.

No. 99–1495–CIV.

United States District Court, S.D. Florida.

Oct. 10, 2001.

Karen Ann Brimmer, Hinshaw & Culbertson, Fort Lauderdale, FL, Francis A. Anania, Paula J. Phillips, Anania Bandklayder Blackwell & Baumgarten, Miami, FL, Meade John Selig, Hialeah, FL, for plaintiffs.

Kathleen M. Savor, Jeffrey M. Glotzer, Attorney General Office, Department of Legal Affairs, Fort Lauderdale, FL, Michael Ross Piper, Jill Suzanne Bilanchone, Johnson, Anselmo, Murdoch, Burke & George, Fort Lauderdale, FL, for defendants.

## ORDER GRANTING DEFENDANT HEAD OF STATE OF FLORIDA DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES' MOTION FOR SUMMARY JUDGMENT

HOEVELER, Senior District Judge.

THIS CAUSE comes before the Court on Defendant Head of State of Florida Department of Highway Safety and Motor Vehicles' Motion for Summary Judgment filed August 31, 2001. Plaintiff responded in opposition.

### Background

The Plaintiff is a black Caribbean immigrant who claims that Opa–Locka Police Officers along with an unnamed Trooper from the Florida Highway Patrol entered his apartment on August 18, 1998 to arrest the Plaintiff's roommate for selling $10 worth of cocaine. Plaintiff represents that he was neither named on the arrest warrant nor did he interfere with the arrest. The Plaintiff alleges that these officers used unjustified force against him, motivated by his race.

According to the Plaintiff, he was lying on his bed in his bedroom when the police entered and told him to get on to the floor. (Christopher Dep. at 45–47) Because the Plaintiff was already on a bed which was close to the ground, he apparently felt exempt from the officer's request, to which he responded "how much more far do you want me to go [?]" Id. at 47. After asking this question, the Plaintiff still remained on the bed, so according to the Plaintiff, an officer used his gun to roll the Plaintiff on to the floor. Id. at 50. The Plaintiff also claims that he was injured when the officers attempted to handcuff him, when the officers struck him on the back of the head, and when he was dragged into another room. Id. at 51, 58–59. The officers are also alleged to have shouted racial slurs at the Plaintiff during the ordeal. Id. at 72–76.

The Plaintiff has brought suit against the city, the officers individually, and the Head of the Department of Highway Safety and Motor Vehicles in its official capacity, pursuant to 42 U.S.C. §§ 1981 and 1983.

### Argument

The Defendant argues that because it is being sued in its official capacity, the 11th amendment bars claims for monetary damages, and the Plaintiff lacks standing to seek an injunction because there is no real and immediate threat of a reoccurrence See City of Los Angeles v. Lyons, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); Chavez v. City of Key West, 15 F.Supp.2d 1301, 1304 (S.D.Fla.1998). The Plaintiff concedes that the 11th amendment bars claims for monetary damages but argues that he is entitled to prospective injunctive relief because "for reasons beyond the Plaintiff's control, he or she is unable to avoid repeating the conduct that led to the original injury at the hands of the Defendant." Honig v. Doe, 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988).

### Summary Judgment Standard

Rule 56(C) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate only where the moving party is entitled to judgment as a matter of law. A court's task is not "to weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The purpose of the summary judgment rule is to dispose of unsupported claims or defenses which, as a matter of law, raise no genuine issues of material fact suitable for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party who moves for summary judgment bears the initial burden "to show the district court, by reference to materials on file, that there is no genuine issue of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). A court must view the evidence presented in a light most favorable to the non-moving party.

However, once the moving party meets his initial burden, "the burden shift[s] to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id.* at 608. The non-moving party may not rest upon mere allegations or denials in his pleadings, but must set forth specific facts, through affidavits or the other forms of evidence provided for by the rules. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Essentially, "the inquiry ... is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505. With this standard in mind, we address Defendant's Motions for Summary Judgment.

### Analysis

When a victim of alleged police misconduct seeks an injunction prohibiting future misconduct, his standing depends on a showing that he faces a real and immediate threat that he will again suffer from the misconduct. *See Lyons,* 461 U.S. at 105–106, 103 S.Ct. at 1666–667. In *Lyons,* the Plaintiff, an African–American, was stopped by police officers for a traffic violation. Without provocation, the officers applied a "chokehold" to Lyons which rendered him unconscious and damaged his larynx. In his count for injunctive relief, Lyons alleged that:

> "numerous persons have been injured as the result of the application of chokeholds, that Lyons and others similarly situated are threatened with irreparable injury in the form of bodily injury and loss of life, and that Lyons justifiably fears that any contact he has with the Los Angeles Police Officers may result in his being choked and strangled to death without provocation, justification or other legal excuse."

*Id.* at 98, 103 S.Ct. at 1663. The Supreme Court held that Lyons did not have standing to seek an injunction because he was not likely to suffer future injury from the use of chokeholds. The Court noted that five months had passed from the time of the incident and the filing of the complaint, and no similar incidents occurred within those five months. The Court stated that the incident did not "establish a real and immediate threat that [Lyons] would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part." *Id.* at 105, 103 S.Ct. at 1667. The Court concluded that "Absent a sufficient likelihood that he will again be wronged in a similar way, Lyons is no more entitled to an injunction than any other citizen of Los Angeles; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement offi-

cers are unconstitutional." *Id.* at 111, 103 S.Ct. at 1670.

Thus, to have standing to seek injunctive relief, Christopher must demonstrate that he faces a real and immediate threat of a similar encounter with the Florida Highway Patrol. Several facts make such an encounter highly unlikely. First, it must be very rare that any person has an encounter with authorities, on the fortuitous basis that the authorities are investigating the persons' roommate. Second, the Plaintiff no longer lives with a suspected drug dealer. Instead, he lives in Williamsburg Nursing Home, an assisted living facility and he "does not have the financial means at this time to live anywhere else." (Pl.'s Opp. to Summ.J. at 14). The Court believes it is highly improbable that the Florida Highway Patrol would bust into a nursing home and rough up its residents. Third, in *Lyons,* the Supreme Court seemingly found it significant that five months had elapsed from the time of the choking incident without any indication that a similar encounter occurred. In the present case, more than three years have passed since the incident occurred, and there is no indication that any similar encounters have occurred. *See Lyons* at 105, 103 S.Ct. at 1667; *Washington v. Vogel,* 156 F.R.D. 676, 680 (M.D.Fla.1994). Thus, it seems remarkably unlikely that such an encounter would reoccur.

The Plaintiff, however, argues that another encounter is likely because he frequently visits his sister and brother-in-law who reside in Opa–Locka county. (Pl.'s Opp. to Summ.J. at 14). Even if the Plaintiff's relatives happen to be suspected drug dealers, the Court finds it highly unlikely that they would fortuitously be investigated by none other than the Florida Highway Patrol during one of the Plaintiff's visits. If the Plaintiff, however, is truly concerned, the Court would advise the Plaintiff to talk with his relatives and find out whether they are engaged in any ille-

gal activity. If they are, the Plaintiff may prefer to limit his frequent visits.

The Plaintiff also argues that the limitations of *Lyons* do not apply when "for reasons beyond the Plaintiff's control, he or she is unable to avoid repeating the conduct that led to the original injury at the hands of the Defendant." *Honig v. Doe,* 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988) In *Honig,* handicapped students brought an action against the school district and others to recover for alleged violation of the Handicapped Act. The Court cited *Lyons,* stating "Our cases reveal that, for purposes of assessing the likelihood that state authorities will reinflict a given injury, we generally have been unwilling to assume that the party seeking relief will repeat the type of misconduct that would once again place him or her at risk of that injury." *Id.* at 309, 108 S.Ct. at 602. The Court, however, found that "No such reluctance is warranted here. It is the respondent['s], very inability to conform his conduct to socially acceptable norms that renders him 'handicapped' within the meaning of the EHA ... As noted above, the record is replete with evidence that Smith is unable to govern his aggressive, impulsive behavior—indeed his notice of suspension acknowledged that [his] ... actions seem beyond his control." *Id.* Therefore, this Court believes that *Honig* stands for the proposition that a Plaintiff may have standing where the Plaintiff is unable to avoid repeating the conduct that led to the original injury, but *only* when the Plaintiff's lack of control makes a reoccurrence sufficiently likely. In the present case, even if it were true that the Plaintiff lacked control over his conduct, it is still highly unlikely that a similar incident will ever occur. Moreover, in the present case, the Plaintiff did not lack control over his conduct which led to the original injury.

Here, there are at least two steps the Plaintiff could have taken to avoid injury at the hands of the Defendant. First, the Plaintiff could have avoided cohabitation with criminal suspects, by better screening his roommates and associates. The Plaintiff may actually have accomplished this now by moving into the Williamsburg Nursing Home. More importantly, however, the Plaintiff could have properly and timely responded to the instructions of the Police. Not only did the Plaintiff fail to get on the floor as he was instructed by the Defendant, he also responded with an arguably flippant remark. The Plaintiff may feel that there is little difference between lying on the floor or a bed that is close to the floor, but this difference may be critical to the police. While a detainee could easily grab a weapon concealed in between a mattress and box spring, or elsewhere on a bed, it would much more difficult for the detainee to pose the same threat while lying on the floor. Thus, unlike *Honig*, in which the Plaintiff was mentally handicapped, the Plaintiff in this case did not lack total control over his conduct which led to his injury. The Court finds that the Plaintiff in this case had at least as much control over his conduct which lead to injury as the African–American male driver in Los Angeles had over being pulled over for a traffic violation in *Lyons*. In fact, Christopher had more control, because here, unlike *Lyons*, the Plaintiff was resistant to the officers.

This Court agrees with other courts which believe that the decision in *Lyons*, seemingly "render[s] [the federal courts] impotent to order the cessation of a policy which may indeed be unconstitutional and may harm many persons." *See Washington*, 156 F.R.D. at 681 (quoting *Williams v. City of Chicago*, 609 F.Supp. 1017, 1020 n. 7 (N.D.Ill.1985)). However, as in any *Washington*, any disagreement this Court has with *Lyons* is irrelevant. "The Supreme Court has spoken, the Court of Appeals for the Eleventh Circuit has followed *Lyons* (as it is bound to do), and this Court is constrained to do likewise." *Washington*, 156 F.R.D. at 681

Therefore, because the Plaintiff lacks standing to seek an injunction against the Defendant Head of State of Florida Department of Highway Safety and Motor Vehicles, it is ORDERED AND ADJUDGED that the Defendant's motion for summary judgment be GRANTED.